# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Plaintiff | * | **CIVIL NO. 13-3541-JFM** |
| | * | |
| **v.** | * | |
| | * | |
| **$91,639.70 in U.S. CURRENCY,** | * | |
| | * | |
| Defendant**.** | * | |
| | ******* | |

## GOVERNMENT'S RESPONSE TO CLAIMANTS' MOTION TO DISMISS

The United States of America, by its counsel, makes this response to the Motion to Dismiss the Government's Verified Complaint for Forfeiture that was filed by the Claimants on January 15, 2014. For the following reasons, the Claimants' motion should be denied.

## I.  INTRODUCTION

The Claimants argue that the Government's Verified Complaint for Forfeiture (the "Complaint") should be dismissed because, having filed the Complaint more than one year after the last structured deposit identified in the affidavit attached to the Complaint, the government is not entitled to rely on 18 U.S.C. § 984, which deems all funds in a bank account fungible (i.e. traceable to forfeitable funds deposited into the account) for one year after the commission of

1

the underlying offense in a forfeiture action.  The Claimants' argument is premature and fails for two reasons.

First, the government has met its burden at the pleading stage by alleging facts sufficient to support a "reasonable belief that it will meet its burden of proof at trial," a burden that does not require complete tracing of the Defendant Property to the offense.  Although the government will eventually have to trace the Defendant Property to the underlying offense at trial, the government anticipates that the evidence developed in discovery will do so in two ways.  As an initial matter, notwithstanding the implication in the Claimants' motion to the contrary, the Complaint and the incorporated affidavit state that the government intends to rely on section 984 only to the extent that it is not able to directly trace the Defendant Property to the offense at trial.  Thus, the government relies on section 984 only in the alternative, and fully intends to develop facts in discovery tracing the Defendant Property to the structuring offenses.  Additionally, although the affidavit incorporated into the Complaint provides evidence of structuring into the bank accounts from which the Defendant property was seized through May 2012, the government is entitled to develop evidence in discovery that the pattern continued up until the date of the seizure, which would place the offense well within section 984's one year time period.  The pattern of structuring presented in the Complaint provides strong circumstantial evidence that the structuring

2

continued until February 6, 2013, the date of the seizure, and thus it is likely that government will be able to develop further direct evidence during discovery.[1]

Second, the Claimants' argument operates under the presumption that the one year period in section 984 runs from the offense to the filing of a complaint. Although the issue is unsettled, the structure of the forfeiture statutes, section 984's legislative history, and basic logic make clear that the one year period in section 984 should be measured from the offense until the seizure of the defendant property or the filing of a complaint.

## II.   FACTUAL BACKGROUND

The facts as pled by the government are presented in the affidavit of IRS Criminal Investigations Special Agent Tanisha Pryce ("Pryce Affidavit"), which is incorporated by reference in the Complaint.  In brief, the Pryce Affidavit presents evidence that over a period of five months from January 2012 through May 2012, 556 structured cash deposits, all under $10,000, totaling $1,668,677 were made into the four accounts from which the Defendant property was seized.

The Pryce Affidavit explains that Zaheer Ahmed is the owner/operator of the companies Dermik, Inc., Dermik LLC and Dermik and Aydin LLC, which operate

---

[1]    The Complaint contains a minor error with respect to the date the Defendant Property was seized.  It states in paragraph 3 that the Defendant Property was seized on February 1, 2013, which is the date the seizure warrants were sworn and issued. Those warrants were not served and the Defendant Property not seized until February 6, 2013.  This is error is not relevant to the pending motion to dismiss.  Should the Court deny the motion to dismiss, the government will seek to file an amended complaint correcting this error.

multiple gas stations and convenience stores located in Montgomery County. Pryce Affidavit ¶ 10.  Dermik LLC operates a Gulf gas station at 15805 Frederick Road, Derwood, Maryland 20855 and holds bank account number ******1001 at Sandy Spring Bank  ("SSB") for that gas station.  *Id.*  ¶ 14.  Dermik LLC also operates a BP gas station at 19304 Montgomery Village Avenue, Gaithersburg, Maryland 20886 and holds bank account number ******0101 at Sandy Spring Bank for that gas station.  *Id.*  ¶ 16.  Dermik, Inc. operates a Gulf gas station at 801 Hungerford Drive, Rockville, Maryland 20850 and holds bank account number ******6401 at Sandy Spring Bank for that gas station.  *Id.*  ¶ 15.  Dermik and Aydin, LLC, operates a BP gas station at 112 University Boulevard West, Silver Spring, Maryland 20901 and holds bank account number ********0729 at Bank of America ("BOA") for that gas station.  *Id.*  ¶ 17.   The Pryce Affidavit presents evidence, summarized on the following chart, that (1) 556 cash deposits were made into the four accounts described above during a six-month period, and <u>none</u> of those deposits were over $10,000, and (2) on multiple occasions during that six-month period sets of sub-$10,000 deposits – that when aggregated exceeded $10,000 – were made either on the same day ("Same Day") or on consecutive days ("Cons. Day").[2]

---

[2] A full schedule of deposits made into the four accounts from January 2012 through May 2012 is included as attachments to the Pryce Affidavit.

| Bank Account | Company | Sub-$10,000 | Same Day | Cons. Day | Structured. | Seized | Compl. |
|---|---|---|---|---|---|---|---|
| SSB ******1001 | Dermik, LLC. | 143 | 20 | 0 | $368,675.00 | $68,835.33 | Pryce Aff. ¶ 19 |
| SSB ******0101 | Dermik, LLC. | 199 | 12 | 0 | $373,779.00 | $12,866.94 | Pryce Aff. ¶ 24 |
| SSB ******6401 | Dermik, Inc. | 61 | 1 | 18 | $482,584.00 | $4,293.75 | Pryce Aff. ¶ 21 |
| BOA*******0729 | Dermik and Aydin | 153 | 17 | 0 | $443,639.00 | $5,843.68 | Pryce Aff. ¶ 26 |

The "Same Day" deposits are particular significant.  For example, with respect to the Sandy Spring Account number ******1001:

- On Tuesday, January 17, 2012 at 11:47 a.m., a $2,280 cash deposit was made into the East Gude branch;  Pryce Aff. ¶ 20;

- Two minutes later, at 11:49 a.m., another cash deposit in the amount of $3,106 was made into the same account at the East Gude branch;  *Id;*

- One minute later at 11:50 a.m., another cash deposit in the amount of $2,534 was made into the same business checking account at the East Gude branch;  *Id.;*

- 56 minutes later, at 12:46 p.m., another cash deposit in the amount of $2,070 was made into the same account at the Montgomery branch; and

- Another deposit was made into the same account at the Montgomery branch two minutes later in the amount of $1,258; *Id.*

The total of these five deposits combined was $11,248 exceeded the $10,000 reporting requirement threshold.  *Id.*  Thus, rather than making one trip to the bank to deposit the whole $11,248, deposits were made first at the East Gude branch, and then 56 minutes later at the Montgomery branch (9 miles from the East Gude

branch and 5.5 miles from the Gulf station that used the account). Such activity strongly suggests intent to avoid the filing of a CTR.[3]

As stated above, this type of same day deposit activity occurred repeatedly into the accounts ending in 1001, 0101, and 0729. In the fourth account, the Sandy Spring account ending in 6401, on a number of occasions, deposits, each under $10,000 but over $10,000 when aggregated, were made on a consecutive days.

The funds listed above were seized on February 6, 2013, pursuant to seizure warrants issued by Magistrate Judge Susan K. Gauvey. On November 22, 2013, the government filed the Complaint.[4]

## III.   LEGAL BACKGROUND

### A.   "Reasonable Belief" Standard for Reviewing Forfeiture Complaint

Supplemental Rule G(2) sets forth what a civil forfeiture complaint must contain. Among other things, a complaint must describe the property subject to

---

[3]     Sandy Spring determined that the five deposits were made into the same account. As discussed below, a bank is required to aggregate cash deposits made on the same day if it knows they are made by or on behalf of the same person. The Bank must file a Currency Transaction Report if that aggregate amount exceeds $10,000. Pursuant to these rules, Sandy Spring Bank filed such a "back room" Currency Transaction Report after the fact, and without the knowledge of the account holder or depositor. Pryce Aff. ¶ 20. This activity nevertheless constitutes "imperfect structuring," which is a violation of 31 U.S.C. § 5324(a)(1).

[4]     During the intervening period, the government was in contact with Claimants' counsel. As pointed out in the Claimants' motion, the government sought and obtained several extensions to the date by which the government was required to file the Complaint under the Civil Asset Forfeiture Reform Act ("CAFRA"). Those waivers did not cover the time period governed by § 984 because such a waiver was not necessary. As discussed below, that time period was already set by the seizure of the Defendant Property.

forfeiture, set forth the basis for jurisdiction and venue, name the statutory

authority on which the forfeiture action is based, and "state sufficiently detailed

facts to support a reasonable belief that the Government will be able to meet its

burden of proof at trial."  Suppl. Rule G(2)(a)-(f).  The quoted language, which

appears in Supplemental Rule G(2)(f), is a codification of the Fourth Circuit's

decision in *United States v. Mondragon,* 313 F.3d 862 (4th Cir. 2002)*,* which

established the standard for filing a civil forfeiture complaint under the predecessor

to Rule G.

Motions to dismiss a complaint are filed pursuant to Supplemental Rule

G(8)(b), which says that "the sufficiency of the complaint is governed by Rule

G(2)."  Suppl. Rule G(8)(b)(ii).  In other words, a complaint is sufficient, and a

motion to dismiss the complaint must be denied, if the complaint satisfies the

"reasonable belief" standard in Supplemental Rule G(2)(f).  *See United States v.*

*$74,500 in U.S. Currency,* 2011 WL 2712604, at *2 (D. Md. July 11, 2011).[5]  As

stated in *$74,500*, the Government does not have to prove its case just to get in the

courthouse door; it need only show that the facts set forth in the complaint are

sufficient to create a *reasonable belief* that the Government will be able to meet its

---

[5]     For the purposes of Rule G(2)(f), the "complaint" includes the incorporated affidavit of a law enforcement officer.  *See United States v. $448,163.10 in U.S. Currency*, 2007 WL 4178508, at *4-5 (D. Conn. Nov. 20, 2007) (in determining the sufficiency of the complaint under the Supplemental Rules, the court may take into account information contained in an affidavit filed along with the complaint); *United States v. 2121 Kirby Drive*, 2007 WL 3378353, at *3 n.1 (S.D. Tex. Nov. 13, 2007) (in determining the sufficiency of a complaint, the court will look not only to the complaint itself, but to any affidavit or other attachment to it)

burden of proof *at trial*. *Id.* (emphasis added).  *See also* Supp. Rule G(8)(b)(ii)

("The complaint may not be dismissed on the ground that the Government did not

have adequate evidence at the time the complaint was filed to establish the

forfeitability of the property.").

Additionally as in all civil cases, when considering a motion to dismiss, a

court must assume all the facts alleged in the complaint to be true. *United States v.*

*Funds in Amount of $101,999.78,* 2008 WL 4222248, at *1 (N.D. Ill Sept. 11,

2008) (if the facts pled in the complaint would be sufficient to establish

forfeitability, motion to dismiss must be denied; court is not free to accept

Claimant's explanation of the facts at the pleading stage).

Finally, as discussed more fully below, inability to trace the Defendant

Property to the underlying offense is not a proper basis for a motion to dismiss.

*See United States v. $40,960.00 in U.S. Currency,* 831 F. Supp. 2d 968, 971 (N.D.

Tex. 2011).   Ultimately, at trial, the government is entitled to rely on 18 U.S.C. §

984, which relaxes the tracing requirement by deeming funds in a bank account

fungible for one year.  Like tracing more generally, however, whether the

requirements of 18 U.S.C. § 984 have been met is an issue for trial, not at the

motion to dismiss stage.  *United States v. $79,650 Seized from ... Afework*, 2009

WL 331294, at *5 (E.D. Va. Feb. 9, 2009) (finding it unnecessary to resolve on a

pre-trial motion to dismiss whether the requirements of section 984 were met;

whether section 984 is properly invoked will matter only if the Government is unable to directly trace the property at trial); *United States v. Funds in the Amount of $193,773.00,* 2011 WL 6181424, at *3 (M.D. Fla. Dec. 13, 2011) (same; following *Afework*).[6]

### B.    Structuring Currency Transactions

The Complaint alleges that the Defendant Property is subject to forfeiture under 31 U.S.C. § 5317(c) because it was involved in structuring offenses in violation of 31 U.S.C. § 5324(a).  Title 31, U.S.C. § 5313 and 31 C.F.R. § 1010 of the Bank Secrecy Act ("BSA") require any financial institution that engages with a customer in a currency transaction (i.e., a deposit or withdrawal) in excess of $10,000 to report the transaction to the Internal Revenue Service on a form known as a Currency Transaction Report ("CTR").  These regulations also require that multiple transactions on the same day be treated as a single transaction if the

---

[6]      In a footnote, Claimants cite to a case from the District of Vermont, *United States v. Contents in Account No. 059-644190-69*, for the proposition that "a bald assertion [by affidavit] that [certain funds are] directly traceable [to an alleged wrongdoer] . . . cannot create probable cause that these funds are, in fact, traceable to [the alleged wrongdoer]." 253 F. Supp. 2d 789, 795-96 (D. Vt. 2003).  This case applies the probable cause standard – the more stringent pleading standard for forfeiture complaints prior to the enactment of the Civil Asset Forfeiture Reform Act.  Furthermore, it involved the tracing of forfeitable money that was deposited in one account to money that was seized from another – not where the initial deposit and seizure were in the same bank account.  Accordingly the Court should follow the two more recent cases – *$79,650 Seized from . . . Afework* from the Eastern District of Virginia and *Funds in the Amount of $193,773.00* from the Middle District of Florida, cited above in this response, applying the less stringent "reasonable belief" standard that is applicable to the present case to facts more analogous to those in the present case, and finding that such tracing is not necessary at the pleading stage.

financial institution has knowledge that they are by, or on behalf of, the same person.  31 C.F.R. § 1010.313(b).

To prove a structuring violation under section 5324(a), the Government is required to prove only that a currency transaction or series of currency transactions exceeding $10,000 was structured within the meaning of 31 C.F.R. § 1010.100(xx), and that the person conducting the transaction intended to evade the currency reporting requirement.  It is not necessary to show that the person knew that structuring was illegal.  *United States v. Ismail*, 97 F.3d 50, 56 (4th Cir. 1996).

As explained by the Fourth Circuit Court of Appeals in *United States v. Peterson*, 607 F.3d 975 (4th Cir. 2010), structuring can take several forms.  Making multiple deposits of $10,000 or less into the same bank on the same day, with the total exceeding $10,000, is called "imperfect structuring" because the bank's obligation to file a CTR is triggered notwithstanding the customer's intent to evade it.  Making multiple deposits into *different* banks on the same day, with no one deposit exceeding $10,000, but with the total being in excess of that amount, is called "perfect structuring" because no one bank has a duty to file a CTR. Imperfect structuring is a violation of 31 U.S.C. § 5324(a)(1), and perfect structuring is a violation of 31 U.S.C. § 5324(a)(3).  *Peterson,* 607 F.3d at 981.

Not all structuring offenses involve breaking up sums in excess of $10,000 into smaller amounts on a single day.  To the contrary, under 31 C.F.R. §

1010.100(xx) a person may commit "serial structuring" if he or she deposits or withdraws $10,000 or less each day over a period of several days (or longer) with the intent to evade the reporting requirement.  Serial structuring is a violation of 31 U.S.C. § 5324(a)(3).  *Peterson*, 607 F.3d at 979.  *See United States v. Van Allen*, 524 F.3d 814, 820-21 (7th Cir. 2008).

## C.      Fungible Property under 18 U.S.C. § 984

In a civil forfeiture action, the government must "trace" the Defendant property to the offense.  *See* 31 U.S.C. § 5317(c)(2) ("Any property involved a violation of section . . . 5324 of this title . . . and any property traceable to such violation . . . may be seized and forfeited to the United States. . .").  As stated above, the government need only do so at trial or in connection with a motion for summary judgment.   It is not required to do so at the pleading stage.  The Claimants, however, argue that nevertheless the government should not be entitled to use the fungible property rules laid out in 18 U.S.C. § 984 in this case. Thus, a brief summary of that statute is warranted.

The strict application of the tracing rules creates obvious problems for the government in cases involving fungible property, such as hoards of cash or electronic funds in bank accounts.  Accounting principles and circumstantial evidence may be helpful up to a point, but there remain numerous cases in which the Government is simply unable to prove that a given dollar in a bank account is

the same dollar that was derived from or used to commit a criminal offense.  One dollar – whether in paper currency or in electronic bits on a computer – looks very much the same as another.

Congress addressed this problem by enacting 18 U.S.C. § 984.  In essence, the statute relaxes the tracing requirement in any case involving fungible property such as cash, electronic funds and precious metals, as long as two criteria are met: the forfeiture action must be commenced within one year of the offense giving rise to the forfeiture (the "temporal nexus" requirement), and the property must be found in the same place or account where the funds directly traceable to the underlying crime were once held (the "physical nexus" requirement).  *See* 18 U.S.C. 984.[7]  So, in a case where section 984 applies, the Government may

---

[7] 18 U.S.C. § 984 states in pertinent parts:

> (a)     (1)     In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution . . . , or precious metals--
>
>         (A)     it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
>
>         (B)     it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
>         (2)     Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.
>
> (b)     No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.
> ***

dispense with the accounting principles that it other would be required to employ at trial to establish the connection between the defendant property and the offense giving rise to the forfeiture. *See United States v. Funds on Deposit at Bank One, Indiana,* 2010 WL 909091, at *7-8 (N.D. Ind. Mar. 9, 2010) (under § 984, when $335,000 in drug proceeds was deposited in an account and commingled with other funds, the entire $264,563 remaining in the account within one year of the offense was forfeitable as drug proceeds without having to do any tracing analysis); *United States v. $79,650 Seized from. . . Afework,* 2009 WL 331294, at *3 (E.D. Va. Feb. 9, 2009) (§ 984 "loosens the burden on the Government to 'trace' forfeitable property" if the property is fungible property found in the same place or account as the directly forfeitable property, and the action is commenced within one year).

As discussed below, however, all of this applies only at trial when the Government is required to establish the forfeitability of the property by a preponderance of the evidence and finds that it must rely on the fungibility of the property to do so.

## ARGUMENT

### A.   The Facts in the Complaint More than Satisfy the 'Reasonable Belief' Pleading Standard

---

(d)      Nothing in this section may be construed to limit the ability of the Government to forfeit property under any provision of law if the property involved in the offense giving rise to the forfeiture or property traceable thereto is available for forfeiture.

As laid out above, the Complaint includes allegations of a consistent pattern of structured deposits into the bank accounts from which the Defendant Property was seized.  Courts have held that allegations of such a pattern are sufficient to satisfy the "reasonable belief" pleading standard.  *See United States v. Funds in Amount of $101,999.78*, 2008 WL 4222248, at *3 (N.D. Ill Sept. 22, 2008) (inference from the facts set forth in the complaint – "hundreds" of $8,000 cash deposits, the number of accounts used, and the total deposited over 3 years – sufficient to support a reasonable belief claimant was engaged in structuring). Indeed, Courts have held that a pattern of deposits such as the one in this case is sufficient for a jury to find that criminal structuring occurred beyond a reasonable doubt – a much higher standard than the pleading standard in a civil forfeiture case. *United States v. McPherson,* 424 F.3d 183, 190-92, (2d Cir. 2005) (criminal structuring case in which 32 cash deposits, all under $10,000 made in a four-month period totaling $258,100 is sufficient to support a jury's verdict that the Defendant knew the CTR reporting requirements and intended to evade them); *see also United States v. Abdelbary*, 496 Fed. Appx. 273, 276-77 (4th Cir. 2010) (Defendant's abrupt change from making regular cash withdrawals over $10,000 to making eleven withdrawals, all under $10,000 in an eight-day period supported a jury's finding that Defendant knew of the CTR reporting requirement and intended to evade it).

14

B.   **The Government Need Not Trace the Defendant Property to the Underlying Offenses at the Pleading Stage**

The Claimants argue that the government has failed to allege that the Defendant Property is traceable to structuring offenses and that it cannot use the loosened tracing requirement in 18 U.S.C. § 984 because it filed the Complaint over a year after the last structured deposit alleged in the Complaint.  This argument fails, because lack of traceability, and particularly whether the requirements of section 984 have been satisfied, is not a proper basis to dismiss a complaint.  *See $40,960.00 in U.S. Currency,* 831 F. Supp. 2d at 971 ("The insufficiency of any tracing of funds to the offense cannot be a basis for dismissal of a forfeiture complaint."); *$79,650 Seized from . . . Afework*, 2009 WL 331294, at *5; *Funds in the Amount of $193,773.00,* 2011 WL 6181424, at *3.  The facts of the case of *United States v. $79,650 Seized from . . . Afework* are nearly identical to those in the present case.  In that case, the complaint alleged that eight structured deposits were made in April 2007.  *$79,650 Seized from . . .  Afework*, 2009 WL 331294, at *1.  The government seized the defendant property in February 2008, and filed a civil forfeiture complaint against that property in November 2008.  *Id*. The claimant moved to dismiss the complaint, alleging that the government could not rely on section 984 because it had filed its complaint more than a year after the structuring activity occurred.  *Id*. at *3.  The Court noted the split in authority,

15

discussed more fully below, as to whether the government may satisfy the requirements of section 984 by seizing the defendant property within a year of the offense, or whether it must file the complaint within a year. *Id.* at *4. The Court, however, concluded that it need not address that question, because "a ruling on a motion for judgment on the pleadings" was not the proper place to resolve the issue – it should be addressed later in the litigation and could be avoided if the government developed evidence directly tracing the property to the offense. *Id.* at *5. Accordingly, as in that case, this Court should reject the Claimants' argument as premature.

In that regard, there are two ways in which the government expects to develop facts in discovery which will trace the Defendant Property to the structuring. First, the government is entitled in discovery to develop evidence that additional structured deposits were made from November 22, 2012 through February 6, 2013. While the affidavit attached to the Complaint provides evidence of structuring through May 2012, the Complaint does not constrain its allegations to an offense of any particular date. *See* Doc. 1 ¶ 8. Moreover, the consistent pattern of structuring from January 2012 to May 2012 presented in the Complaint provides strong circumstantial evidence that the structuring continued up to the

date of the seizure.[8]  Any structured funds made during that time period would be within one year of the filing of the Complaint and thus be deemed traceable to the Defendant Property under 18 U.S.C. § 984, even if the relevant date was the filing of the Complaint rather than the seizure.

Second, the Claimants' Motion to Dismiss selectively quotes the Complaint and the Pryce Affidavit to give the impression that the government is only relying on section 984.  The Complaint and the Pryce Affidavit, however, make clear that the government intends to rely on section 984 in the alternative, and only to the extent it is necessary.[9]  Accordingly, the government expects to trace using accounting principles that courts have permitted for that purpose.   For instance,

---

[8]     Although not part of the Complaint, the bank statement attached to the claim of Jasra Inc. provides a preview of what the government expects to find.  That bank statement, for January 2013, shows the same pattern that appeared from January 2012 to May 2012: 29 deposits over a month period, all under $10,000, totaling $46,363.00 including three days where the total amount deposited was between $9,000 and $10,000.  Doc. 13, (Claim of Jasra Inc.) Ex. 6 at 4.

Additionally, on the day the Defendant Property was seized, agents interviewed Ahmed.  Ahmed admitted that he knew the CTR reporting requirement, and stated that he attempted to keep his deposits under $10,000, because the bank's filling out the CTR form took too long.  Again, this evidence was not included in the Complaint, because the information in the Complaint more than satisfied the government's pleading requirement, but will certainly be used at trial or in connection with a motion for summary judgment, and provides further indication that during discovery the government will be able to develop evidence that the structuring activity continued up until the date of the seizure.

[9]     *See* Compl. ¶ 9 ("*To the extent it is necessary to do so*, Plaintiff intends to rely on the provisions of 18 U.S.C. § 984 to establish that the Defendant Property is the property involved in the violations of 31 U.S.C. § 5324 described in the attached affidavit.") (emphasis added); Pryce Affidavit ¶ 36 ("I am further advised that pursuant to 18 U.S.C.§ 984, currency in a bank account is considered fungible from one year of the date of the offense.  Accordingly, *even if the Government was required* [in order to obtain a seizure warrant] *to establish strict tracing of forfeitable funds to a bank account to satisfy the probable cause requirement for civil forfeiture*, any volatility in the bank account since May 2012 may be disregarded.") (emphasis added).

the government will be able to use the "first in, last out" accounting principle,

which deems any forfeitable property deposited into a bank account to be the last

money withdrawn from the account, and thus any property in the account after the

depositing of the forfeitable funds – up to the lowest balance the account

maintained in the time between the deposit and the seizure, or the amount of the

forfeitable funds, whichever is lower – is deemed to be traceable to the forfeitable

funds.  *See United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1160 (2d Cir.

1986).[10]  Application of the lowest intermediate balance rule and the other

accounting principles set forth in *Banco Cafetero* is commonplace in civil

forfeiture cases.  *See, e.g., United States v. Real Property Located at 6415 N.

Harrison Ave.*, 2011 WL 2580335, at *3 (E.D. Cal. June 28, 2011) (the

Government may rely on accounting rules such as those explained in *Banco

Cafetero* to satisfy its tracing requirements, and need not trace "the exact same

identifiable assets" through a series of bank accounts); *United States v. One

Parcel of Real Property . . . 170 Westfield Dr.*, 34 F. Supp. 2d 107, 116-17

(D.R.I. 1999) (under *Banco Cafetero*, money in a commingled account is

---

[10]    The Claim of Jasra, Inc. provides evidence that $60,000 was deposited via a wire (and thus non-structured) transfer in to Sandy Spring Account no. ******1001 on January 30, 2013. Doc. 13, (Claim of Jasra Inc.) Ex. 6 at 4.  The bank statement included with the Claim of Jasra, Inc. further states that there was an intermediate balance the day before that transfer of $13,879.74.  *Id.*  While directly tracing all of the $68,835.33 seized from that account to the structured transactions may be more difficult: (1) it remains to be determined whether additional structured funds were deposited from January 31, 2013 to February 6, 2013; and (2) as stated above, the government will be able to rely on section 984, even if the Court determines that a complaint must be filed within a year of the offense to do so, if more than $68,835.33 in structured deposits were made between November 22, 2012 and February 6, 2013.

traceable if the balance never fell below the amount deposited ["last out" rule];

assets purchased with commingled funds are traceable up to the amount deposited

["first out" rule]; the Government may elect which rule to apply depending on the

circumstances).

In this regard, it is also worth reiterating that both Supplemental Rule

G(8)(b)(ii) and 18 U.S.C. § 983(a)(3)(D) provide that a forfeiture complaint may

not be dismissed "on the ground that he Government did not have adequate

evidence at the time the complaint was filed to establish the forfeitability of the

property."  Moreover, section 983(c)(2) expressly provides that "the Government

may use evidence gathered after the filing of a complaint for forfeiture to establish,

by a preponderance of the evidence, that property is subject to forfeiture."  These

provisions reflect the balance that Congress struck in the Civil Asset Forfeiture

Reform Act when it imposed strict deadlines on the Government's commencement

of forfeiture proceedings and raised the Government's burden of proof but at the

same time ensured that the Government could use the tools of civil discovery to

meet its burden after filing a timely complaint.[11]

---

[11]    *See United States v. $22,173.00 in U.S. Currency,* 2010 WL 1328953, at \*3-4 (S.D.N.Y. Apr. 5, 2010) (the import of section 983(a)(3)(D) is that the Government is entitled to rely on evidence gathered after the complaint is filed to prove its case); *United States v. 630 Ardmore Drive*, 178 F. Supp. 2d 572, 581 (M.D.N.C. 2001) ([T]he Government's forfeiture claim can advance forward in face of a 12(b)(6) motion to dismiss even if the Government's Complaint does not provide all the facts that would allow the Government to ultimately succeed in the forfeiture proceeding); *United States v. All Funds on Deposit . . . Held in the Name of Jaeggi*, 2007 WL 2114670, \*4 (E.D.N.Y. 2007) same, citing *630 Ardmore Drive*); *United States v.*

**C.     Section 984 is Applicable if the Defendant Property is Seized with One Year of the Underlying Offense**

Although, as stated above, the issue is premature at this stage, under 18 U.S.C. § 984, the government is entitled to trace all of the funds structured within one year of the date of the seizure, which occurred on February 6, 2013.  The legislative history of section 984 expressly states that the one-year temporal nexus requirement is satisfied if the Government commences its civil forfeiture action *either* by seizing the property *or* by filing a complaint within one year of the underlying offense. *See* H. R. Rep. No. 102-28, pt. I, at 47-48 (1991) ("property is subject to forfeiture [under § 984] if not more than one year has passed between the time the original property subject to forfeiture was so located or maintained and the time the forfeiture action was initiated by seizing the property or filing the complaint"); *see also United States v. Funds Representing Proceeds of Drug Trafficking ($75,868.62)*, 52 F. Supp. 2d 1160, 1166 (C.D. Cal. 1999) (section 984(c) is satisfied if the complaint was filed within 1 year of the money laundering offense, even though the seizure occurred 94 days later, and "the Court concludes that either the filing of the complaint or the seizure 'commence' the action for purposes of section 984").

---

*$4,096 in U.S. Currency*, 2005 WL 1127138, at *6 (M.D. Ga. 2005) (same, also citing *630 Ardmore Drive*).

In one case, however, the Third Circuit held, notwithstanding the legislative history, that the Government could not rely on section 984 even though it seized the property within one year of the offense because it did not also file its complaint within that same time period. *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 160-61 (3d Cir. 2003).   The Court reasoned that section 984 was effectively a statute of limitations, and in that context the plain language word "commence" can only refer to the filing of a complaint.  *Id.* at 159.  District Courts in Utah and the Northern District of Alabama have followed this Third Circuit case. *United States v. $303,581.82 in U.S. Currency,* 2010 WL 1657154 at *3-4 (D. Utah Apr. 22, 2010) (following *$8,221,877.16* on this point)*; United States v. Currency, $300,000 Seized from Bryant Bank,* 2013 WL 1498972 at *4-5 (N.D. Ala. Apr. 9, 2013) (same); *United States v. $83,274.51 Seized from BBVA Compass Bank Account,* 2013 WL 5524729 at *5-6 (N.D. Ala. Sept. 30, 2013) (same).

With due respect to the Third Circuit, the government submits that *United States v. $8,221,877.16* was wrongly decided, and that this Court should not follow its holding.  When interpreting a statute, a court "must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute . . .  and our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *United States v.*

21

*Bly,* 510 F.3d 453, 460 (4th Cir. 2007). The Third Circuit found the term

"commence" in section 984 to be unambiguous, but outside the statute of

limitations context, that term is ambiguous, or if anything, given the statutory

structure, unambiguously refers to seizure or the filing of a complaint.  Because the

one-year period is a temporal nexus requirement and not a statute of limitations on

the commencement of a separate cause of action, the requirement in section 984

may be satisfied by seizing the property – and thus ensuring that there is no further

attenuation between the defendant property and the underlying offense – just as the

House Report says it can.  The purpose of section 984 was to create a period in

which cash withdrawals and deposits could be ignored.  Because seizure removes

the defendant property from the bank account, there are no more withdrawals or

deposits to be disregarded after that point.

Even if the Third Circuit was correct, and the term "commence" is

unambiguous, the Third Circuit's interpretation would produce an absurd result,

directly at odds with the intent of the drafters and the structure of the forfeiture

statutes.  A term in a statute should not be given its unambiguous meaning when

"the literal application of a statute will produce a result demonstrably at odds with

the intentions of its drafters." *Bly,* 510 F.3d at 460.  Requiring the Government to

file a civil forfeiture action in the district court immediately upon discovering that

the forfeitable property has been deposited into a bank account – which, in effect,

is what the Third Circuit rule would require – is inconsistent with the procedure for

processing forfeiture cases.   The Government has 60 days from the seizure of the

property to commence an *administrative forfeiture* proceeding, the claimant has 35

days to respond, and the Government has 90 days thereafter to file an action in the

district court.   Thus, Congress has determined that, in the usual case, the

Government would have up to 185 days from the date of the seizure to commence

a judicial forfeiture action; but under the Third Circuit's rule, the Government

would have to leap-frog over all of those procedures and file its civil forfeiture

complaint immediately upon the day of the seizure to take advantage of the one-

year limit in section 984.   That cannot be what Congress intended.[12]   Indeed, the

present version of section 984 and the deadlines set forth in section 983 were

enacted at the same time in the same legislation – the Civil Asset Reform Act of

2000, Pub. L. 106-185, § § 2, 3 and 13 (2000) – which strongly suggests that

Congress intended that the two provisions be read together in a way that makes

both fully applicable, and not as Claimant suggests, in a way that renders one

virtually useless if the Government makes use of the other.

---

[12]     Claimants argue that Congress intended to force the government *either* to rely on section 984 and file a civil forfeiture complaint or pursue an administrative forfeiture proceeding.  *See* Claimants' Mot. to Dismiss at 13-14.  This flatly contradicts the legislative history cited above. Additionally, if Congress intended to prevent the government from relying on section 984 in cases they first pursue administratively, it would have done so more directly – for instance by adding a provision directly stating that section 984 cannot be used in cases pursued administratively.

IV.   **CONCLUSION**

For the reasons stated above, the Court should DENY the Claimants' motion to dismiss the Complaint.  To the extent the Court grants the Claimants' motion to dismiss in whole or part on any pleading deficiency, the government asks leave to amend its complaint to cure that deficiency.[13]

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

February 3, 2014

/ss/_____
Stefan D. Cassella
Evan T. Shea
Assistant United States Attorneys

_____

[13] Discovery in this case has not yet begun and the Claimant would not be prejudiced by allowing such an amendment.

<u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that this Response to Claimants' Motion to Dismiss

was filed using CM/ECF on February 3, 2013 and served on all parties

electronically via that system.

/s/_____
Evan T. Shea
Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, MD 21201
410-209-4982